333 A.2d 859

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jane BARILAK, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 5, 1974.

Decided March 18, 1975.

Nino V. Tinari, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, James J. Wilson, Asst. Dist. Attys., Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

PER CURIAM:

The appellant, Jane Barilak, was convicted by a jury of murder in the first degree. Post trial motions were denied and a sentence of life imprisonment was imposed. This appeal was then filed. We reverse and order a new trial for the reasons that follow.

The record discloses the following chronology of events: About 4 a. m. on January 13, 1971, the lifeless body of one Philip A. Hartman was found on a deserted road in Northeast Philadelphia. Hartman's throat had been slit. A police investigation of Hartman's activities disclosed he had been alive and at the apartment of the appellant and her husband between 3:00 a. m. and 3:30 a. m. When police officers visited the Barilak apartment, the two voluntarily accompanied the officers to the Police Administration Building to assist in the investigation. They arrived at homicide headquarters at 1:35 p. m., January 13th.

The appellant, after being warned of her constitutional rights, was questioned from 2:00 p. m. to 4:00 p. m. During this period, she denied any knowledge of the killing. Following this, she agreed to submit to a polygraph examination. The polygraph examination was administered between 5:10 p. m. and 7:10 p. m. and the results

indicated deception. Between 8:15 p. m. and 1:30 a. m. of January 14th, the appellant was questioned intermittently by four different detectives and persisted in denying knowledge of the killing. Shortly after 1:30 a. m., when confronted with evidence that blood stains matching the victim's blood type had been found in her automobile, she admitted her involvement in a plan to kill Hartman and detailed the circumstances.

After a two and one-half hour rest period, the appellant was accompanied by detectives to her apartment, where for the next five hours a search was conducted pursuant to a warrant. When in the course of the search blood was discovered on the kitchen floor, she explained this by saying she had engaged in an argument with Hartman and had struck him with the telephone causing his mouth to bleed.

Following the search, the appellant was returned to the Police Administration Building and underwent a second polygraph examination between 1:15 p. m. and 3:45 p. m. on January 14th. She was then questioned by a fifth police detective who tape-recorded her statement. This was substantially similar to the oral statement she had given earlier. She then offered to give a formal written statement to the police in exchange for the erasing of the tape. After the tape had been erased, she refused to give a formal written statement stating she was too scared. Following this, a short visit with her husband ensued, after which she was informed she was under arrest. She was arraigned at about 6:40 p. m. on January 14th.

The only assignment of error requiring discussion concerns the evidentiary use at trial of oral incriminating statements the appellant made to the police.[1] It is maintained this evidence was the product of an unnecessary delay between arrest and arraignment and, hence, its use

1. A pretrial motion to suppress this evidence on the ground it was the product of an unnecessary delay between arrest and arraignment was denied.

at trial was proscribed by Rule 118 (now 130) of the Pennsylvania Rules of Criminal Procedure, 19 P.S. Appendix. See *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), and *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974). We agree.

The Commonwealth contends that prior to 8:00 p. m. on January 13th,[2] the appellant was free to leave police headquarters if she wished, but voluntarily remained to assist in the investigation of Hartman's death. It is urged, therefore, that the time the appellant spent in headquarters between 1:35 p. m. and 8:00 p. m. should not be considered in determining if there was "an unnecessary delay."

Even if the six and one-half hours between 1:35 p. m. and 8:00 p. m. are discounted, and 8:00 p. m. is considered to be the commencement of appellant's police custody, she was not taken before a committing magistrate at 8:00 p. m. or within a reasonable time thereafter. Rather she was admittedly detained and subjected to additional questioning over the next five hours and fifteen minutes before she incriminated herself. Under such circumstances, this more than five hour period constituted "an unreasonable delay" within the meaning of Rule 118, and the incriminating statements made thereafter were reasonably related thereto. Hence, the evidence thereof should have been suppressed and rejected at trial. See *Commonwealth v. Williams*, supra; *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974); and, *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973).

Judgment reversed and a new trial is ordered.

JONES, C. J., and EAGEN and POMEROY, JJ., dissent.

2. It was at this time that the police learned that the automobile in which blood stains were found was registered to Jane Barilak. Before this, the Commonwealth contends the police did not have probable cause; nor was Jane Barilak a suspect because of the force and brutality used in the killing of Hartman.