327 A.2d 618
**COMMONWEALTH of Pennsylvania**
**v.**
**Nathaniel JOHNSON, Appellant**
**(two cases).**

Supreme Court of Pennsylvania.
Argued May 3, 1974.
Decided Oct. 16, 1974.

172

Michael J. Stack, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Nathaniel Johnson, aged fourteen, was tried by a judge and jury and found guilty of murder in the first degree and two counts of aggravated robbery. Post-trial motions were denied, and appellant was sentenced to life imprisonment, to commence after he becomes of age. This appeal followed.

On March 23, 1972, Louis Gentile and David Merrone were approached by four male youths at the corner of Fifty-ninth and Trinity Streets in Philadelphia. The youths asked Merrone and Gentile for money. They refused and were then assaulted. Gentile was punched in the face and Merrone was stabbed. The four youths fled the scene and were apprehended together in a residence located at 5825 Trinity Avenue. Merrone subsequently died as a result of the stab wounds.

■ Appellant was arrested at 10:10 p. m., on March 23, 1972, and was transported to police headquarters, where his questioning began at 10:50 p. m. At this time appellant was given his *Miranda* warnings. The interview lasted until 11:30 p. m., during which time appellant denied any involvement in the homicide. Appellant was then left alone until 1:35 a. m. on March 24, 1972, at which time he was interrogated until 2:05 a. m. During this period, appellant orally admitted his involvement in the homicide. Appellant was then questioned from 2:45 a. m., until 3:00 a. m. At 3:30 a. m., appellant's mother arrived at police headquarters, at the request of police. Appellant spoke with his mother. After appellant and his mother spoke, she was told about appellant's *Miranda* rights, and at 4:53 a. m., appellant, with his mother's consent, was given a polygraph test, which lasted until 6:38 a. m. At 7:00 a. m., appellant was confronted with a co-defendant in the case and returned to the

interrogation room. Appellant then gave a formal typewritten statement, admitting that he passed the knife from its owner to Andre, the boy who actually stabbed the victim, after Andre had requested a knife. At 8:40 a. m., this statement was completed and signed by appellant and his mother. Appellant filed a pretrial motion to suppress this confession. The motion was denied and the confession was used as evidence against him at trial.

Appellant now argues, and we agree, that appellant's confession should have been suppressed as the product of an unnecessary delay between his arrest and his arraignment. See *Commonwealth v. Futch*, 447 Pa. 389, 290 A. 2d 417 (1972).

Appellant denied knowledge of the homicide when he was first questioned at 10:50 p. m., on March 23; it was clear that appellant was not willing to co-operate with the police. If appellant had admitted his knowledge of the homicide, it might have been proper to continue the interrogation. See *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974), where we explained that:

> " . . . it may be permissible to delay the arraignment of an arrested individual if he initially indicates a willingness to cooperate, in order to obtain information from him about co-suspects or other evidence so that such co-suspects or evidence might be speedily located while still in the vicinity. . . ."

■ Moreover, the fact that appellant did not co-operate with the police and the absence of any intervening events between the initial questioning and the questioning which began at 1:35 a. m., indicate that it was the delay which caused appellant to change his mind and decide to admit his involvement in the killing. We also note that the Commonwealth has advanced no reason for the delay, which leads us to the conclusion that the Commonwealth delayed the arraignment of this fourteen-

year-old defendant with the specific intention of obtaining his confession. Rule 118 Pennsylvania Rules of Criminal Procedure, 19 P.S. Appendix, was fashioned to prevent such procedure. See *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973).

■ The Commonwealth again urges that our decision in *Futch, supra,* should not be applied to confessions taken before it was decided. We have specifically rejected that argument on numerous occasions. See *Commonwealth v. Dixon,* 454 Pa. 444, 311 A.2d 613 (1973), *Commonwealth v. Peters,* 453 Pa. 615, 306 A.2d 901 (1973), *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973). Instead, we have applied our decision in *Futch,* if the issue has been properly preserved, to every case which comes before us on direct appeal, if it involves a confession taken after the procedural rule requiring arraignment without unnecessary delay after arrest went into effect.

■ In order that we dispel any doubts regarding the time span to be considered in computing the delay in arraignment, we specifically reject the Commonwealth's argument that the delay period ran from the time appellant gave his oral admission until his formal confession was recorded. The Commonwealth obviously makes this argument in an effort to prove that the delay in arraignment after the oral admission was harmless, since the oral admission was identical to the written confession. This argument would have vitality had appellant given an admission when he was initially questioned and simply repeated that admission in a subsequent formal statement.

Appellant raises other trial errors which we need not consider since appellant must be retried.

Judgment of sentence reversed and case remanded for a new trial consistent with this opinion.

NIX, J., concurs in the result.

POMEROY, J., filed a dissenting opinion in which JONES, C. J., and EAGEN, J., join.

POMEROY, Justice (dissenting).

In previous cases in which arguments have been advanced against the retroactive application of the exclusionary rule established in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), the majority of the Court has for the most part ignored (rather than "specifically rejected", as the majority opinion puts it) these arguments. *But see Commonwealth v. Peters,* 453 Pa. 615, 306 A.2d 901 (1973). While the opinion of the Court in the case at bar at least takes note of these arguments, it nevertheless again applies the *Futch* rule, first announced on April 20, 1972, to an arrest and investigation which occurred months prior to that date.

I continue to adhere to the view that the *Futch* exclusionary rule, intended as a deterrent to inordinate police delay in violation of our rule of criminal procedure,* should not operate with respect to conduct which took place before the exclusionary penalty was made known. *See Commonwealth v. Dutton,* 453 Pa. 547, 551, 307 A.2d 238, 240 (1973) (dissenting opinion of Pomeroy, J., joined by Mr. Chief Justice Jones and Mr. Justice Eagen). *See also Commonwealth v. Terry,* 457 Pa. 185, 321 A.2d 654, 656 (1974) (concurring opinion of Pomeroy, J., joined by Mr. Chief Justice Jones and Mr. Justice Eagen) ; *Commonwealth v. Cherry,* 457 Pa. 201, 321 A. 2d 611, 613 (1974) (dissenting opinion of Pomeroy, J., joined by Mr. Chief Justice Jones and Mr. Justice Eagen); *Commonwealth v. Dixon,* 454 Pa. 444, 448, 311 A.2d 613, 615 (1973) (dissenting opinion of Pomeroy, J., joined by Mr. Chief Justice Jones and Mr. Justice Eagen) ; and *Commonwealth v. Tingle,* 451 Pa. 241, 247, 301 A.2d 701,

* Pa.R.Crim.P. 118 (formerly rule 116(a), now Rule 130).

704 (1973) (concurring opinion of Eagen, J., joined by Mr. Chief Justice Jones and Mr. Justice Pomeroy).

Regretfully, I must again register dissent.

JONES, C. J., and EAGEN, J., join in this dissenting opinion.