393 A.2d 1194

COMMONWEALTH of Pennsylvania

v.

**Joseph BOWEN, Appellant.**

Supreme Court of Pennsylvania.

Argued April 15, 1977.

Reassignment Sept. 29, 1978.

Oct. 6, 1978.

Hugh C. Clark, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Jane C. Greenspan, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Over twenty-eight hours elapsed between appellant Joseph Bowen's arrest and his preliminary arraignment. In that period of delay, police conducted fifteen interviews with appellant and obtained four inculpatory statements. Over appellant's objection, the trial court admitted these inculpatory statements into evidence. Appellant argues that police obtained these inculpatory statements in violation of Pa.R.Crim.Proc. 118, *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), and its progeny.[1] We agree and reverse.[2]

Without a warrant, Philadelphia police arrested appellant at about 10:30 p. m., February 21, 1971, and took him to the Police Administration Building. Police suspected that, earlier that day, appellant killed a Philadelphia police officer.

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1978). This case was reassigned to the writer on September 29, 1978, for the purpose of preparing an opinion expressing the views of a majority of this Court.

2. Appellant also asserts that: (1) his written inculpatory statement was involuntary; (2) oral testimony of another offense was erroneously admitted into evidence; and (3) the trial court's charge invaded the province of the jury.

Police placed appellant in an interrogation room, where questioning began at 11:30 p. m. Police subjected appellant to repeated interrogation, throughout which appellant repeatedly denied all involvement in the killing.

Until 3:15 p. m., February 22, sixteen and three-quarters hours after his arrest, appellant did not inculpate himself and police still had not provided for his preliminary arraignment. At 3:15 p. m., however, after police confronted appellant with the fact that the gun found near the scene of the killing had been traced to his brother, appellant acknowledged that he had obtained the gun from his brother a few days earlier. About two hours later, police briefly confronted appellant with his brother. Between 5:40 p. m. and 6:25 p. m., over nineteen hours after his arrest, appellant further inculpated himself. Further police questioning conducted until 7:25 p. m. produced a third statement in which appellant inculpated himself in a previous shooting.

At 8:45 p. m., over twenty-two hours after appellant's arrest the previous day, police began to take a formal, written statement from appellant. Appellant signed this writing two hours later. It was not until 3:15 a. m. the next day, four and one-half hours after appellant signed the statement and twenty-eight and three-quarters hours after appellant's arrest, that a preliminary arraignment was held.

The pre-arraignment delay in this case constitutes an undisputable violation of Pa.R.Crim.Proc. 118. Rule 118, then applicable,[3] provides:

"When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him.

(a) If the complaint charges a court case, the defendant shall be given an immediate preliminary arraignment."

In *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), this Court held that a violation of Rule 118 requires the

---

3. On September 18, 1973, Pa.R.Crim.Proc. 118 was renumbered as Rule 130 and amended, effective January 1, 1974. Rule 118 therefore applies to the present case.

suppression of "all evidence obtained during 'unnecessary delay' except that which . . . has no reasonable relationship to the delay whatsoever." In *Commonwealth v. Williams*, 455 Pa. 569, 572, 319 A.2d 419, 420 (1974), we again set forth the criteria by which violations of the Rule are to be determined: "the delay must be unnecessary; evidence that is prejudicial must be obtained; and the incriminating evidence must be reasonably related to the delay." Accord, e. g., *Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973). Compare *Commonwealth v. Davenport*, 471 Pa. 278, 286, 370 A.2d 301, 306 (1977) (effective May 16, 1977, "[i]f the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment shall not be admissible at trial").

The lengthy delay in this case was clearly established by the evidence at the suppression hearing. The repeated, lengthy interrogation of appellant, both before and after he was confronted with the fact that the gun found at the scene of the crime was traced to his brother, was deliberately designed to elicit appellant's full confession to the crime. Police persisted in their questioning to create an atmosphere conducive to appellant's self-incrimination. They did so despite appellant's repeated denials over a period of sixteen hours. Sixteen and three-quarters hours elapsed from the time of arrest until appellant's admission of possession of his brother's gun; nineteen hours elapsed before appellant gave a full oral statement; appellant's formal statement was not completed until twenty-three hours after arrest, and preliminary arraignment did not take place until twenty-eight and three-quarters hours after arrest. There is no room for doubt that appellant's statements were directly related to the unnecessary, unjustified, and prejudicial delay.

We have stated repeatedly that Rule 118, *Futch*, and its progeny are specifically designed to put a stop to the practice of delaying arraignment of a defendant while the investigation against him continues. E. g., *Commonwealth v. Smith*, 472 Pa. 414, 372 A.2d 761 (1977). We reaffirm this principle today.

Judgment of sentence reversed and new trial granted.

LARSEN, J., did not participate in the consideration or decision of this case.

POMEROY, J., filed a dissenting opinion in which EAGEN, C. J., joins.

POMEROY, Justice, dissenting.

There is no doubt in my mind that the delay between arrest and arraignment in this case was inordinate and in manifest violation of our rule which requires prompt arraignment, Pa.R.Crim.P. 130. As I have pointed out before, however,[1] the exclusionary rule of *Futch* was designed as a preventive measure to put an end to continual disregard of the rule by the police. Like other constitutionally related exclusionary rules, it says to police and prosecutors that if they obtain evidence illegally, it may not be used at trial. Conceding the validity of this approach,[2] exclusion obviously can have no deterrent effect whatever on police action which took place in the past, prior to the announcement of the rule. Such was the case here. Bowen's arrest occurred on February 21, 1971; the exclusionary rule of *Futch* was not announced until over a year later, on April 20, 1972. To exclude now the confessions obtained before the new rule existed can hardly be justified as a deterrent to police

1. See *Commonwealth v. Dutton*, 453 Pa. 547, 551, 307 A.2d 238, 240 (1973) (dissenting opinion of POMEROY, J., joined by JONES, C. J., and EAGEN, J.). See also my dissenting opinions in *Commonwealth v. Smith,* 472 Pa. 414, 420, 372 A.2d 761, 764 (1977) (joined by EAGEN, C. J.); *Commonwealth v. Cullison,* 461 Pa. 301, 304, 336 A.2d 296, 297 (1975) (joined by JONES, C. J., and EAGEN, J.); *Commonwealth v. Johnson,* 459 Pa. 171, 176, 327 A.2d 618, 620 (1974) (joined by JONES, C. J., and EAGEN, J.); *Commonwealth v. Wilson,* 458 Pa. 285, 288, 327 A.2d 621, 622 (1974) (joined by JONES, C. J. and EAGEN, J.); *Commonwealth v. Cherry,* 457 Pa. 201, 206, 321 A.2d 611, 613 (1974) (joined by JONES, C. J., and EAGEN, J.); *Commonwealth v. Dixon,* 454 Pa. 444, 448, 311 A.2d 613, 615 (1973) (joined by JONES, C. J., and EAGEN, J.), and my concurring opinion in *Commonwealth v. Mitchell,* 464 Pa. 117, 127, 346 A.2d 48, 53 (1975) (joined by JONES, C. J., and EAGEN, J.).

2. The pros and cons of the "exclusionary rule" and the situations in which it should be applied continue to be matters of debate. See, e. g., Y. Kamisar, "Is the Exclusionary Rule an 'Illogical' or 'Unnatural' Interpretation of the Fourth Amendment?", 62 Judicature 67 (August, 1978).

458

misconduct; it is rather the needless imposition of a penalty against society itself.[3]

EAGEN, C. J., joins in this dissenting opinion.

---

**3.** I note that the Court's opinion does not hold that the confession was coerced or that it was involuntary under the "totality of the circumstances" test.