## Commonwealth v. Enders

*Joseph DeVanney, Assistant District Attorney*, for Commonwealth.
*Arthur Kusic*, for defendant.

DOWLING, *J.*, October 17, 1978—This case raises a recurring stumbling block faced by district justices in dealing with drunk driving offenses. The facts are undisputed and appear to present the typical case in which the problem arises.

Arlo Enders was arrested following an accident on December 17, 1977, at 8:15 p.m. He was taken by a trooper to police headquarters and given a breathalyzer test. The arresting officer then attempted to secure a district justice for purposes of a preliminary arraignment. The district justice on duty, following what was apparently accepted practice in such cases, elected to forego the arraignment. Enders was released and proceedings were later initiated against him on January 31, 1978, when a written complaint was filed. The preliminary arraignment was held on February 21, 1978.

Defendant contends that his warrantless arrest on December 17, 1977, set in motion a procedural chain requiring arraignment within six hours. Failure to do so, defendant argues, calls for suppression of the breathalyzer results and dismissal of the complaint.

The applicable Rule of Criminal Procedure is Rule 130 which states: "When a defendant has been arrested without a warrant in a court case, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him and he shall be given an immediate preliminary arraignment."

This rule and its progenitors, Rules 118 and 118A have been rather definitely interpreted by our appellate courts. The parent case appears to be Com. v. Futch, 447 Pa. 389, 393, 290 A. 2d

417 (1972), where it was contended that a line-up was in violation of the "unnecessary delay" provision of the then Rule 118. The Supreme Court held that evidence obtained during an unnecessary delay between arrest and arraignment is inadmissible *provided that the delay contributed to the gathering of evidence*. Following the lead taken by the U.S. Supreme Court, it stated:

"The United States Supreme Court in the exercise of its supervisory powers has fashioned the so-called McNabb-Mallory rule, which precludes the use of any evidence obtained during an 'unnecessary delay'. This is subject to the common sense caveat that the 'unnecessary delay' must have contributed to the securing of the evidence. In United States v. Mitchell, 322 U.S. 65, 64 S. Ct. 896 (1944), for example, a confession given within minutes of arrest was held admissible despite a subsequent eight-day delay before presentment to a committing magistrate because the Court found that the delay did not contribute in any way to securing the challenged confession."

In further articulation of its holding, the court, in a later decision, established a 3-prong test: (1) The delay must be unnecessary; (2) the evidence must be prejudicial; and (3) the evidence must be reasonably related to the delay: Com. v. Williams, 455 Pa. 569, 319 A. 2d 419 (1974).

Splashing into these relatively calm waters came Com. v. Davenport, 471 Pa. 278, 370 A. 2d 301 (1977), which created a turbulence which seemingly threatens to inundate the heretofore common sense approach. The facts in Davenport are worthy of note. Defendant was convicted of

murder and in his appeal asserted that he was entitled to a new trial because a statement taken from him should have been suppressed as the product of unnecessary delay between arrest and arraignment in violation of Pa.R.Crim.P. 130, citing Com. v. Futch, supra. The court, after speaking of the great benefits to the accused of prompt arraignment and citing Futch and Williams, held that since the evidence indicated that appellant was not arraigned for at least 13 hours after his arrest, it was not a prompt arraignment. It also found that the three requirements listed in the Williams case were satisfied, pointing out that initally the defendant denied any involvement and it was only after eight hours in custody during which time he was subject to the two interrogation sessions that he finally made an incriminating statement. The court stated "we conclude that this statement was reasonably related to the unnecessary delay" and held that the statement should have been suppressed and granted a new trial.

This, of course, is in conformity with the prior decisions but unfortunately the Supreme Court did not stop there but then went on to enunciate an inflexible rule:[1] "If the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment shall not be admissible at trial."

Defendant argues that this rule is dispositive of

---

1. This is somewhat similar to the arbitrary position taken by the Pennsylvania Supreme Court in interpreting the prompt trial requirements into a fixed period of 180 days. Perhaps no other decision has caused such consternation to district attorneys, a concern to law-abiding citizens and unabashed delight to the criminal element.

the case and mandates suppression of the breathalyzer test.

But does it? If we take the wording literally, it refers only to statements obtained after arrest and would not encompass breathalyzer tests. Did the court mean to limit the rule to statements and exclude other evidence. This is highly questionable in view of the fact that the parent case, Futch, which Davenport cites, did not involve a statement but a line-up. Furthermore, there the court spoke not of just excluding statements but "all evidence obtained during unnecessary delay." See also Com. v. Tingle, 451 Pa. 241, 301 A. 2d 701 (1973), and Com. v. Dutton, 453 Pa. 547, 307 A. 2d 238 (1973).

All of which compels one to conclude that the language in Davenport, establishing the rule, cannot be taken literally but must be interpreted in light of prior decisions, to wit: the words "any statement" by implication includes any evidence. This, of course, is also in conformity with the reason behind requiring arraignment without unnecessary delay. While confessions or statements may make up a large part of evidence obtained during the delay, there is no reason for limiting it to this particular type of evidence.

Therefore, can we conclude that the absence of any reference to a reasonable relationship to the unnecessary delay is not inherent in the new rule even though literally taken it does not articulate this? As noted above, the Davenport decision cited numerous cases and emphasized the relationship between the evidence obtained and the delay. The parent case, Futch, discussing the McNabb-Mallory rule enunciated by the United States Supreme Court which precludes the use of any evidence obtained during unnecessary delay stated "this is subject to the commonsense caveat that the

'unnecessary delay' must have contributed to the securing of the evidence." It then went on to cite U.S. v. Mitchell, 322 U.S. 65 (1944), as an example where a confession given within minutes of arrest was held admissible despite a subsequent eight-day delay before presentment to a committing magistrate because the court found that the delay did not contribute in any way to securing the challenged confession.

It thus appears that just as the rule enunciated in Davenport applies to more than statements obtained after arrest, it also encompasses by implication the common sense approach that there be a connection between the delay and the evidence obtained.

This should be particularly pertinent when we consider breathalyzer tests. By their very nature, there is no incentive for delay in obtaining this evidence for by its very nature it dissipates with time. In addition, the legislature has prescribed that persons operating motor vehicles in the Commonwealth are deemed as giving consent to such tests: Act of June 17, 1976, P.L. 162, 75 Pa.C.S.A. §1547(a).

As a practical matter, releasing defendant after the breathalyzer test would appear to accomplish the primary purpose of a preliminary arraignment which is to insure that the accused is promptly afforded the protection embodied in Pa.R.Crim.P. 140 which states that the courts should inform the accused of the charges against him, his right to counsel, his right to bail, and his right to a preliminary hearing: Com. v. Dixon, 454 Pa. 444, 311 A. 2d 613 (1973); Com. v. Tingle, supra.

Also to be taken into account is the peculiar nature of the charge in question, i.e., the impairment

of one's faculties because of over ingestion of alcohol or drugs. One can certainly take judicial notice that in many cases persons arrested for this offense are in no position to understand their rights or comprehend what the district justice is advising them. As stated by President Judge Gates in Com. v. Rudy, 15 Lebanon 8 (1974), aff'd per curiam 238 Pa. Superior Ct. 758, 357 A. 2d 544 (1976), in dealing with a similar situation: "In our humble judgment, arraigning a drunk is as senseless as arresting a man on the operating table of a hospital emergency room. Service is the first duty a policeman owes the public."

We therefore hold that while Rule 130 of the Pa.R.Crim.P. is applicable, its further definitiveness as announced by our Supreme Court in Com. v. Davenport, supra, does not apply to a breathalyzer test administered within six hours of arrest.

Accordingly, we enter the following

## ORDER

And now, October 17, 1978, defendant's motion to dismiss and his motion to suppress are denied.